Stearns, J.
The plaintiffs, Dartmouth police officers Wilfred St. Pierre, William Dugan, and Gilbert Catón, and their wives, Judith St. Pierre, Joan Dugan, and Danielle Catón, seek damages from the Town of Dartmouth, Selectmen Leonard Gonsalves and William Mosher, and Town Counsel John Birknes for allegedly failing to defend and indemnify in a civil action brought on by the officers’ professional misconduct.[3] The Town, Gonsalves, Mosher, and Birknes now move to dismiss the complaint pursuant to Mass.R.Civ.P. 12(b)(6), or in the alternative, for summary judgment pursuant to Mass.R.Civ.P. 56. Specifically, the defendants contend that the Town has indemnified the police officers to the extent required by G.L.c. 258, §13, and that as a matter of law, neither the Town nor its officials owe any additional duties to the plaintiffs. For the reasons discussed below, the motion to dismiss and/or for summary judgment will be allowed.
BACKGROUND
Viewed in the light most favorable to the plaintiffs, the facts are these. In 1987, Dartmouth police officers St. Pierre, Dugan and Catón arrested Andrew Kaluma after an altercation in the driveway of St. Pierre’s home. After Kaluma was acquitted of various state crimes, he brought an action in federal district court accusing the police officers of false arrest, assault and battery, malicious prosecution, and intentional infliction of emotional distress. The Massachusetts Police Association retained James Haddad to defend the officers. On November 30, 1989, a federal jury found St. Pierre, Dugan, and Catón jointly and severally liable for violating Kaluma’s civil rights, and assessed compensatory damages of $90,796. The jury also assessed Catón $1,000 in punitive damages.
Eight years before the Kaluma lawsuit was filed, the Town had adopted G.L.c. 258, §13, obligating itself to indemnify town employees for employment-related tort liability. In addition, the collective bargaining agreement between the Town and the Dartmouth Police Brotherhood (the officers’ exclusive bargaining representative), required the Town to indemnify its police officers for any damages assessed against them while “acting within the scope of their authority.”
*21 Following the verdict, Selectmen Gonsalves and Mosher voted with other selectmen to put the issue of indemnification of St. Pierre, Dugan and Catón before a Special Town Meeting. Although the Town Meeting voted to indemnify the officers, town voters overrode the decision in a special referendum.[4] In 1990, Dugan brought a declaratory judgment action in Superior Court against the Town seeking indemnification under G.L.c. 258, §13. The Court (Carey, J.) ordered the Town to reimburse St. Pierre, Dugan, and Catón the $90,796 in compensatory damages plus interest and costs.[5] The Town complied.
On September 4, 1992, the police officers and their spouses filed this lawsuit against the Town, the named officials, and Attorney Haddad.
DISCUSSION
When evaluating the sufficiency of a complaint pursuant to Mass.R.Civ.P. 12(b)(6), the court must take the allegations of the complaint, as well as any inferences favorable to the plaintiff, as true. Eyal v. Helen Broadcasting Corp., 411 Mass. 426, 429 (1991). “The complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle [him] to relief.” Nader v. Citron, 372 Mass. 96, 98 (1977), quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957). See also Charbonnier v. Amico, 367 Mass. 146, 152-53 (1975); Whitinsville Plaza, Inc. v. Kotseas, 378 Mass. 85, 89 (1979). However, if the moving party presents matters outside the pleading that the court does not exclude, and the other parties have notice and an opportunity to respond, “the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56.” Mass.R.Civ.P. 12(b). See Cousineau v. Laramee, 388 Mass. 859, 860 n.2 (1983).
I.Birknes’s Personal Liability for Professional Negligence
At a June 3, 1993, hearing on this motion, plaintiffs agreed to dismiss all professional negligence claims against Birknes in his individual capacity. Accordingly, Counts II, IV and VII of the complaint shall be dismissed.
II.Town Officials’ Negligent Failure to Advise
Plaintiffs contend that Selectmen Gonsalves and Mosher, and Town Counsel Birknes (in their official capacities) were derelict in handling the Kaluma action. Specifically, the officers allege that Gonsalves, Mosher and Birknes failed to advise them that the Town had insurance to cover any liability on their part, and that they were entitled to indemnification pursuant to Mass. G.L.c. 258, §13. In addition, plaintiffs contend that Birknes was made aware of an offer by Kaluma to settle the federal lawsuit but that he failed to convey the offer to the plaintiffs. These failures of communication, plaintiffs continue, amounted to negligence on the selectmen’s part and legal malpractice by Birknes.
Although the officers allege that they were owed a duty by the defendants to advise them of the coverage and limits of the Town’s insurance, plaintiffs have not identified, nor has the court found any authority for imposing such a duty upon Town officials. Similarly, Mosher and Gonsalves did not owe a duty to advise plaintiffs regarding the contents of published laws of the Commonwealth.[6]
Absent an attorney-client relationship between Birknes and the police officers, this analysis holds true for Birknes as well. “It is the general rule that an attorney’s liability for malpractice is limited to some duty owed to a client . . . Where there is no attorney/client relationship there is no breach or dereliction of duty and therefore no liability.” McGlone v. Lacey, 288 F.Supp. 662, 665-66 (D. S.D. 1968), as quoted in DeVaux v. American Home Assurance Co., 387 Mass. 814, 817-18 (1983).
Assessing the allegations in the light most favorable to the plaintiffs, no reasonable finder of fact could conclude that an attorney-client relationship existed between Birknes and the plaintiffs. Birknes never agreed to represent the officers. Moreover, Birknes never impliedly agreed to give, or actually gave the police officers legal advice. See DeVaux, supra, 387 Mass, at 817-18 (discussing the requirements for implying an attorney-client relationship). Accordingly, Counts I, III, and VI of the complaint shall be dismissed.
III.Breach of the Collective Bargaining Agreement
Plaintiffs contend that Gonsalves and Mosher’s alleged refusal to honor the collective bargaining agreement between the Town and the Dartmouth Police Brotherhood constituted a breach of contract. Even if plaintiffs’ allegations are true, the police officers have not stated a claim upon which relief can be granted. An employee must exhaust the grievance procedures provided by the bargaining agreement before seeking judicial remedies. Balsavich v. Local 170 International Brotherhood of Teamsters, 371 Mass. 283, 286 (1976). The employee is entitled to such remedies only if “the union fails in its duty to represent [him] fairly in pressing the grievance,... the employer repudiates or otherwise nullifies the grievance machinery, or the union and the employer contrive together to subvert [the grievance procedure].” Id. Here, plaintiffs have failed to set forth any facts justifying circumvention of the contractual grievance procedures. Thus, Count V of the complaint must be dismissed.
IV.Federal Civil Rights Violations
To state a claim under 42 U.S.C. §1983, the plaintiff must show that he or she was deprived of a right, privilege or immunity secured by the United States *22 Constitution or by the laws of the United States. Parratt v. Taylor, 451 U.S. 527, 535 (1981); Miga v. Holyoke, 398 Mass. 343, 349 (1986). Section 1983 is a remedial statute. It does not create any substantive rights. See New York Airlines, Inc. v. Dukes County, 623 F.Supp. 1435, 1445 (D.Mass. 1985) (“[i]n order for the remedy provided to be available, a party must establish the violation of a federal right independent of §1983”).
Here, plaintiffs have not sufficiently pleaded any deprivation of a secured right. Although Count IX of the complaint alludes to equal protection and substantive due process violations, these bare allegations are not enough. See Coyne v. City of Somerville, 972 F.2d 440, 443 (1st Cir. 1992) (to state a substantive due process claim the plaintiff must identify a liberty or property interest within the scope of the federal due process clause that defendants have violated, or show that the “state’s conduct ‘shocks the conscience’ ”) (citations omitted); Correa-Martinez v. Arrillaga-Belendez, 903 F.2d 49, 53 (1st Cir. 1990) (to state a civil rights claim the plaintiff must set forth facts that convey “specific instances of unlawful discrimination”) (citation omitted); Dartmouth Review v. Dartmouth College, 889 F.2d 13, 16 (1st Cir. 1989) (recognizing the importance of requiring that plaintiffs set forth more than conclusoiy allegations in civil rights cases). Accordingly, Count IX shall be dismissed.
V. Intentional Infliction of Emotional Distress
To recover damages for intentional infliction of emotional distress, plaintiffs must prove: (1) that defendants “intended to inflict emotional distress or knew or should have known that emotional distress was a likely consequence of their conduct”; (2) that defendants' “conduct was extreme and outrageous” and “beyond all possible bounds of decency;” (3) and that as a result of this conduct plaintiffs suffered severe emotional distress. Nancy P. v. D’Amato, 401 Mass. 516, 520 (1988). Plaintiffs have alleged no facts that would permit a reasonable jury to conclude that defendants acted with the intent of inflicting severe emotional distress or that defendants’ conduct rose to a level of outrageousness that society would consider intolerable. Agis v. Howard Johnson Co., 371 Mass. 140, 144-45 (1976); Foley v. Polaroid Corp., 400 Mass. 82, 99-100 (1987).
VI. Loss of Consortium
During the hearing on this motion, plaintiffs agreed that Count XI of their complaint, which seeks damages for loss of consortium, is derivative of its other claims. This count consequently falls in tandem.
ORDER
For the foregoing reasons, it is ORDERED that defendants Town of Dartmouth, Gonsalves, Mosher, and Birknes’s motion to dismiss and/or for summary judgment on Counts I, II, III, IV, V, VI, VII, IX, X, and XI be ALLOWED.

 The claims against defendant James Haddad are unrelated to the Town’s alleged wrongs, and are not part of this motion.

 The initial decision to indemnify was taken under the discretionary provisions of G.L.c. 258, §9, rather than the mandatory provisions of G.L.c. 258, §13. The Town insists that this was done at plaintiffs’ request, noting that the scope of indemnity under §9 is broader than that under §13 (principally with regard to attorneys fees). While plaintiffs deny that they made such a tactical choice, anApril 10,1990, letter to the Selectmen submitted on their behalf by the lawyer for the Police Brotherhood explicitly requests indemnification under §9.

 There can be no dispute that the Town had any obligation to reimburse Catón for the punitive damages award. See Pinshaw v. Metropolitan District Commission, 402 Mass. 687 (1988). Although Judge Carey properly held that the Town was not liable for plaintiffs’ attorneys fees, these were paid by the Massachusetts Police Association and not by the plaintiffs personally. Judge Carey’s order was modified by the Supreme Judicial Court to require the Town to pay the attorney fees and costs incurred in prosecuting the lawsuit before Judge Carey. (At several points in plaintiffs’ brief, plaintiffs maintain that $50,000 in attorney fees were paid by Catón. This, and several other misleading assertions, are troubling.)

 It would also appear that plaintiffs have failed to demonstrate that they suffered any actual damages, even assuming that defendants tortiously breached a duty of care to the plaintiffs. Plaintiffs concede that they have been fully reimbursed for their out-of-pocket expenses to the extent the law permits. The only “economic harm” they point to is the attachments placed on their homes following the federal verdict. Whether these attachments constitute a true “economic harm” is questionable. See Garweth Corp. v. Boston Edison Co., 415 Mass. 303, 305 (1993).