KAMAL AZZI *vs.* WESTERN ELECTRIC COMPANY.[1]

Essex.    December 12, 1984. — February 26, 1985.

Present: DREBEN, KAPLAN, & SMITH, JJ.

*Practice, Civil,* Summary judgment. *Labor,* Grievance procedures. *Contract,* Collective bargaining contract, Employment.

In an action by an employee who alleged that his employer had wrongfully discharged him, summary judgment was correctly ordered for the employer, where the employee had failed to pursue the grievance and arbitration provisions of the collective bargaining agreement under which he was employed and where the materials before the judge made no evidentiary showing that the union had violated its duty of fairly representing him or that the employer repudiated or otherwise nullified the grievance and arbitration procedures. [408-409]

An employee covered by a collective bargaining agreement providing that employees may only be discharged for "just cause," who was discharged from his employment, did not have an independent common law claim against his employer that would permit him to bring an action alleging that the employer, by discharging him, had broken its implied covenant of fair dealing, without the employee's first having invoked the grievance and arbitration procedures in the collective bargaining agreement. [409-410]

CIVIL ACTION commenced in the Superior Court Department on December 15, 1983.

The case was heard by *John T. Ronan,* J., on a motion for summary judgment.

*Neal H. Sahagian* for the plaintiff.

*David J. Kerman* for the defendant.

SMITH, J. The plaintiff, Kamal Azzi, was discharged from his employment as a machine operator with Western Electric Company (company) for not reporting to work after he was found capable of working by a physician. He commenced this

---

[1] Now known as AT&T Technologies, Inc.

action in the Superior Court on December 15, 1983, alleging that the company had (1) broken its implied contract and covenant of fair dealing, and (2) wrongfully discharged him for pursuing his rights under the workers' compensation act.[2]

On March 29, 1984, the company filed a motion requesting that the complaint be dismissed under Mass.R.Civ.P. 12(b)(1) or (6), 365 Mass. 755 (1974), or, in the alternative, for summary judgment pursuant to Mass.R.Civ.P. 56(b), 365 Mass. 824 (1974). The company contended that the plaintiff was covered by a collective bargaining agreement and that his remedy, if any, had to be pursued under the grievance and arbitration provisions of that agreement. In support of its motion, the company submitted a copy of the collective bargaining agreement, an affidavit of the manager of labor relations at its North Andover plant, and other materials. The plaintiff responded with an affidavit of his lawyer and various documents. On May 17, 1984, a Superior Court judge, after a hearing, allowed the company's motion and ordered the action dismissed.[3] The reason for his action was that the plaintiff was "covered by a collective bargaining agreement and those procedures were neither exhausted nor even resorted to by [the plaintiff]." The plaintiff has appealed the judge's action.

The following summary of uncontroverted facts is taken from the materials submitted to the motion judge by the plaintiff and the company. Prior to November 18, 1982, the plaintiff was employed by the company as a machine operator at its North Andover plant. He was represented for collective bar-

---

[2] The plaintiff made a third allegation in his complaint against the company. He never addressed that allegation in the Superior Court nor in his brief before this court. We do not consider it. Mass.R.A.P. 16(a)(4), as amended, 367 Mass. 921 (1975).

[3] The motion judge, in dismissing the plaintiff's complaint, did not state under which rule of procedure he was acting. But, as noted in the text, both the plaintiff and the defendant submitted factual materials outside the pleadings. The judge, therefore, must have treated the motion as a motion for summary judgment under rule 56 and not as a motion to dismiss under rule 12. *Stop & Shop Cos.* v. *Fisher,* 387 Mass. 889, 892 (1983). Thus, "we review the judge's dismissal of this action as though he had granted a motion for summary judgment." *Cousineau* v. *Laramee,* 388 Mass. 859, 860 n.2 (1983).

gaining purposes by Local 1365 of the Communications Workers of America (union). The terms and conditions of his employment were governed by a collective bargaining agreement. That agreement contained grievance and arbitration clauses. The agreement specifically stated, in regard to the settlement of any grievances arising with respect to wages, hours of work and other conditions of employment, that the procedures contained in the agreement must be followed. Art. 10. Another provision of the agreement (Art. 28) governed the suspension and termination of employees and provided that the union might question the justification of the action taken by the company and "[a]ny such question shall be considered in accordance with the grievance procedure prescribed in [Art.] 10."

Beginning on December 7, 1982, the plaintiff was absent from work on a sickness disability from a work-related injury. While on disability leave, he filed a claim with the Industrial Accident Board in regard to his injury.[4] On April 4, 1983, the plaintiff was examined by a physician at the company's plant and was found capable of returning to work immediately. He refused to return to work. On April 6, 1983, he was informed by telegram that if he did not report to work by April 8, 1983, the company would assume he was no longer interested in working for it. Again, the plaintiff did not report to work and the company informed him that since he did not return to work, the company would classify him as having "resigned." The company subsequently informed the union that the plaintiff had "resigned."

The plaintiff in his complaint alleges that he was wrongfully discharged for failing to report to work and that his discharge was in retaliation for pursuing his rights under the workers' compensation act. Thus, the plaintiff claims that the company discharged him without "just cause" and thereby violated the agreement. Before bringing an action against his employer for a violation of a collective bargaining agreement, the employee is required to exhaust the grievance procedures. *Vaca* v. *Sipes,*

---

[4] While on disability leave, the plaintiff received from the company the full amount of benefits to which he was entitled under the agreement.

386 U.S. 171, 184 (1967). *Balsavich* v. *Local Union 170, Intl. Bhd. of Teamsters,* 371 Mass. 283, 286 (1976). As an exception to that requirement, an employee may bring an action against his employer for a violation of a collective bargaining agreement if he alleges and shows that the union has failed in its duty to represent him fairly, or that his employer repudiated or otherwise nullified the grievance procedures. *Ibid.* Also see *Hines* v. *Anchor Motor Freight, Inc.,* 424 U.S. 554, 563-566 (1976); *Hayes* v. *New England Millwork Distribs., Inc.,* 602 F.2d 15, 18 (1st Cir. 1979).

There is no allegation in the plaintiff's complaint that the union violated its duty of fair representation. Further, the plaintiff does not allege any facts in his complaint that would constitute a claim that the company repudiated or otherwise nullified the grievance and arbitration procedures.[5] Conclusionary allegations, such as those set forth by the plaintiff, do not effectively state a claim of repudiation by the company. See *Robbins* v. *George W. Prescott Publishing Co.,* 457 F. Supp. 915, 921 (D. Mass. 1978). Also see *Balsavich* v. *Local Union 170, Intl. Bhd. of Teamsters,* 371 Mass. at 286-287.

The plaintiff contends that the allegations contained in his complaint set out an independent common law claim against the company. He relies on *Fortune* v. *National Cash Register Co.,* 373 Mass. 96 (1977), as the basis for his contention. The plaintiff argues that, because of the existence of the common law claim, he does not have to invoke the grievance and arbi-

---

[5] In materials submitted to the judge in response to the defendant's motion, the plaintiff claimed that the company gave misleading information to the union. The company informed the union that the plaintiff had "resigned"; it did not describe the termination as a discharge. The plaintiff contends that the union as a result failed to initiate a grievance on his behalf. These allegations do not adequately allege that the company repudiated the grievance procedures. See *Hayes* v. *New England Millwork Distribs., Inc.,* 602 F.2d at 17-18. The use of the term "resigned" by the company is entirely consistent with its stance that the plaintiff's conduct constituted a resignation. An employer can take a position contrary to that of an employee without being deemed to have repudiated the grievance procedures. *Rabalais* v. *Dresser Indus., Inc.,* 566 F.2d 518, 520 (5th Cir. 1978). *Robbins* v. *George W. Prescott Publishing Co.,* 457 F. Supp. 915, 921-922 (D. Mass. 1978).

tration procedures prior to bringing this action against the company.

The plaintiff's reliance on *Fortune* is misplaced. That case held that, in some circumstances, a covenant of good faith and fair dealing may be implied in an at-will employment relationship. *Id.* at 104. There is no at-will employment relationship here. Rather, as the collective bargaining agreement states, the employee may only be discharged for "just cause." Thus, "the company had negotiated away its right to discharge anyone except for 'just cause.' Since there is an explicit contractual provision giving the employee greater protection than the implied covenant, there is no need to imply the covenant." *Bertrand* v. *Quincy Mkt. Cold Storage & Warehouse Co.,* 728 F.2d 568, 571 (1st Cir. 1984). Unlike the plaintiff in *Fortune,* the plaintiff in this case had a remedy. His claim that his discharge was retaliatory or as a result of bad faith or unfair dealing by the company could be determined within the framework of the grievance and arbitration procedures because such discharge would not be for "just cause." To permit employees to circumvent existing grievance and arbitration procedures, by bringing actions against their employers in the first instance, does not strike us as a commendable practice. "[I]t would deprive employer and union of the ability to establish a uniform and exclusive method for orderly settlement of employee grievances. If a grievance procedure cannot be made exclusive, it loses much of its desirability as a method of settlement." *Republic Steel Corp.* v. *Maddox,* 379 U.S. 650, 653 (1965). Therefore, we hold that the plaintiff does not have an independent common law claim that would permit him to bring an action without invoking the grievance and arbitration procedures.

Because there is no genuine issue of material fact as to whether the company actions amounted to a repudiation of the grievance and arbitration procedures, the company was entitled to judgment as matter of law.

*Judgment affirmed.*