ROBERT W. CAPPELLANO *vs.* MASSACHUSETTS BAY
TRANSPORTATION AUTHORITY & others. [1]

No. 93-P-865.

Suffolk. January 4, 1995. - March 7, 1995.

Present: DREBEN, GILLERMAN, & LAURENCE, JJ.

*Labor*, Fair representation by union, Discharge.

On a claim against a union for alleged breach of duty of fair representa-
tion, the judge correctly ordered summary judgment for the defendant
where the plaintiff did not demonstrate a reasonable expectation of
proving that the union's actions toward him were arbitrary, discrimina-
tory, or in bad faith. [233-235]
A plaintiff was barred under the terms of an applicable collective bargain-
ing agreement from bringing an action against his employer for viola-
tion of the agreement, where he did not show that the union had failed
in its duty to represent him fairly. [235-236]

CIVIL ACTION commenced in the Superior Court Depart-
ment on January 11, 1989.

The case was heard by *Patrick J. King*, J., on motions for
summary judgment.

*Gerald T. Anglin* for the plaintiff.

*John McMahon* for Boston Carmen's Union Division 589,
Amalgamated Transit Union.

*John D. Cirame* for Massachusetts Bay Transportation
Authority.

DREBEN, J. In this action brought by the plaintiff against
the union for breach of its duty of fair representation, and
against the Massachusetts Bay Transportation Authority

---

[1]James O'Leary, John Leary, and members of the Boston Carmen's
Union Division 589, Amalgamated Transit Union.

(MBTA) for wrongful termination of employment,[2] a judge of the Superior Court allowed the defendants' motions for summary judgment. On appeal, the plaintiff claims that the judge erred in allowing the motions because there were genuine issues of material fact as to whether the plaintiff was informed that he would be required to submit to a drug screen as a condition of reinstatement and whether he consented to the test. In affirming the judgment, we take a somewhat different view of the primary issue of the appeal.

The plaintiff was hired as a part-time bus driver by the MBTA in 1985. During the 112 weeks that he was employed, he had missed more than sixty days of work and had received a number of suspensions for absenteeism. On August 19, 1987, he was suspended indefinitely, pending a recommendation for discharge. A grievance was filed by the plaintiff's union representative, and the latter obtained a conditional reinstatement. The plaintiff would have to take a physical exam including a screening for alcohol, would have to maintain perfect attendance for the next two years, and would have to start as a new employee. Although the union claimed that one of the requirements was that the plaintiff would have to take a drug test, and that he consented to do so, the plaintiff maintains that he had no notice prior to arriving at the examination that it would include a screening for drugs.

He claims, contrary to the judge's conclusion, that he did not consent and that his lack of consent creates a genuine issue of material fact which precludes the allowance of the defendants' motions. Whether the plaintiff consented prior to his coming to the examination is not, however, determinative of his claims against the union or against the MBTA.

In his deposition, the plaintiff admitted that he was informed by the doctor, prior to his physical, that the exam

---

[2]The plaintiff asserted other claims against each defendant, but on appeal he makes no argument with respect to these claims within the meaning of Mass.R.A.P. 16(a)(4), as amended, 367 Mass. 921 (1975).

would include testing for drugs.[3] He then submitted to the exam, including the drug screening. When the test showed the presence of cannabis, the recommendation for discharge was reinstated, and the MBTA terminated the plaintiff's employment based on the excessive number of absences from the job.

The union pursued the grievance through the MBTA's director of human resources and its general manager, but declined to seek arbitration. The plaintiff was informed that he had the right to appeal that decision to the membership at a meeting. Although the plaintiff attended the meeting, he did not appeal.

1. *Claim against the union for breach of duty of fair representation.* Under § 22.8 of the constitution of the Amalgamated Transit Union, parties "must not take legal action or go into court until they have exhausted all their rights within the Union." See *Azzi* v. *Western Elec. Co.,* 19 Mass. App. Ct. 406, 408-409 (1985). The plaintiff, not having appealed and hence not having exhausted his union remedies, argues that he comes under an exception that permits "an employee [to] bring an action against his employer for a violation of a collective bargaining agreement if he alleges and shows that the union has failed in its duty to represent him fairly . . . " *id.* at 409.

---

[3] When asked whether he had any conversation with the doctor about the physical examination, the plaintiff answered as follows:

A. "Yes. He told me it was going to require drug and alcohol screening."

Q. "Now, that's before he took the sample; isn't that correct?"

A. "That's before he took the sample."

Q. "Did you make any response?"

A. "I objected. I told him I didn't think it was required, but he told me it was a voluntary quit if I didn't take the test."

Q. "Did you attempt to get back to Mr. Lydon [executive board member of the union]?"

A. "No, I couldn't because it was eight o'clock in the morning and I was anxious to go back to work."

Q. "Did you ask the doctor if the appointment could be rescheduled to a later time and date so that you could consult with your representative or with Mr. Lydon about the drug or alcohol screen?"

A. "No, I didn't."

A union is in breach of its duty of fair representation if its actions toward an employee are "arbitrary, discriminatory, or in bad faith." *Vaca* v. *Sipes*, 386 U.S. 171, 190 (1967). The union may not "arbitrarily ignore a meritorious grievance or process it in perfunctory fashion." *Id.* at 191. *Graham* v. *Quincy Food Serv. Employees Assn. & Hosp., Library & Pub. Employees Union*, 407 Mass. 601, 606 (1990). In order to find a breach "[t]here must be substantial evidence of bad faith that is intentional, severe, and unrelated to legitimate union objectives." *Id.* at 609 (citations omitted). We conclude that the union "has shown by material described in Mass.R.Civ.P. 56(c), unmet by countervailing materials, that the plaintiff has no reasonable expectation of proving [this] essential element of [his] case." *Brunner* v. *Stone & Webster Engr. Corp.*, 413 Mass. 698, 705 (1992). See *Kourouvacilis* v. *General Motors Corp.*, 410 Mass. 706, 711 (1991).

Although the plaintiff claimed hostility on the part of the union, there is nothing in the record to substantiate his claim. The only example of hostility cited by the plaintiff was that James Lydon, his union representative, "was getting a little bit disturbed that I was calling him on a regular basis and more or less told me so." The plaintiff could muster no other acts of hostility.

Nor did the union arbitrarily ignore a meritorious grievance which the plaintiff describes as "a presumptively unconstitutional drug test." At the time of his discharge, the law relating to drug tests had not as yet evolved, and there was no presumption of unconstitutionality.[4] Indeed, the practice

---

[4]Even the law as it has later developed does not appear to help the plaintiff. In *Johnson* v. *Massachusetts Bay Transp. Authy.*, 418 Mass. 783, 786 (1994), the plaintiff bus driver who had been previously suspended was reinstated subject to a one-year probationary period during which any rule violation would result in his discharge. After a passenger reported that the driver of a particular route had alcohol on his breath, the plaintiff was instructed to appear the next morning for a physical examination which would include urine and blood tests. He orally gave permission to a physician for a drug and urine test. He claimed he agreed to the drug test only because of the coercion that he would have been terminated if he did not consent. Although, as in the present case, a written consent would have

of the union at that time, as set forth in its unrefuted answers to the plaintiff's interrogatories, was that "in resolving grievances, the union and the grievants . . . accepted MBTA's insistence on a drug/alcohol screen as a condition of return-to-work agreements." The union's belief that the claim was not worth pursuing was reasonable. The plaintiff's attendance record was dismal, and he had received numerous suspensions. The conditions that the MBTA and the union, if not the plaintiff, had agreed upon had not been met — the plaintiff had failed the drug test. There is nothing in the record to suggest that the union was arbitrary in determining that pursuit of the grievance would not succeed and in deciding not to take the matter to arbitration. If a union's failure to press a grievance was "the result of a reasonable and good-faith belief that [the] grievance[] [was] unmeritorious, the union was vested with the discretion not to pursue [it]." *Graham* v. *Quincy Food Serv. Employees Assn. & Hosp., Library & Pub. Employees Union*, 407 Mass. at 609. Even if the union, acting diligently and in good faith, misjudges the grievance, it has not committed a breach of the duty of fair representation as long as it has acted rationally. *Early* v. *Eastern Transfer*, 699 F.2d 552, 555 (1st Cir.), cert. denied, 464 U.S. 824 (1983). Walsh, A Judicial Guide to Labor and Employment Law 416-417 (1990). Thus, the plaintiff has shown no reasonable expectation of proving that the union failed in its duty of fair representation. This is so whether or not the plaintiff consented to a drug screening prior to appearing at the exam.

2. *Action against MBTA.* Since the plaintiff has failed in his claim that the union was in breach of its duty of fair

---

strengthened the MBTA's position on the consent issue, the court held that "requiring testing as a condition of continued employment of a probationary employee would not be impermissible coercion in this case involving the operator of a public conveyance." *Ibid.* The only distinction between this case and *Johnson* is that the condition here was imposed in order that the plaintiff not be fired and to enable him to become a probationary employee for two years, while the plaintiff in *Johnson* was already a probationary employee when the condition was required.

representation, his action against the employer is barred.[5] See *Johnston* v. *School Comm. of Watertown*, 404 Mass. 23, 25 (1989); *Azzi* v. *Western Elec. Co.*, 19 Mass. App. Ct. at 408-409.

*Judgment affirmed.*

---

[5]The plaintiff argues that he is free to pursue his action against the MBTA only if the union has breached its duty of fair representation. Accordingly, we do not consider whether there is any other basis for a claim against the employer as urged by the union to defeat the claim against it.